IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THOMAS G. HAYES

      **Petitioner,**

v.                                                      **Civil Action No. 1:08cv14**
                                                            **(Judge Keeley)**

**WAYNE A. PHILLIPS, Warden,**

      **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

The *pro se* petitioner initiated this case on January 4, 2008, by filing an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 in which he seeks an order directing the Bureau of Prison ("BOP") to transfer him to a Community Corrections Center ("CCC") for the last six months of his term of imprisonment. The petitioner paid the required filing fee on January 11, 2008.

On February 29, 2008, the undersigned made a preliminary review of the file and determined that summary dismissal was not warranted at that time. Consequently, the respondent was directed to file an answer to the petition and did so on March 31, 2008, by filing a Motion to Dismiss. The Court issued a Roseboro Notice on April 2, 2008, and the petitioner filed a response to the respondent's motion on May 1, 2008. This case is before the undersigned for a report and recommendation pursuant to LR PL P 83.09, et seq.

**I.**     **Factual and Procedural History**

The petitioner was convicted in the United States District Court for the Eastern District of Michigan and sentenced to an 21 month term of incarceration. See Memorandum (dckt. 9) p. 5. The petitioner was subsequently designated to serve his sentence at FCI Morgantown.

In his petition, the petitioner asserts that the BOP's policy of transferring prisoners to a CCC for the last 10% of their term of imprisonment is standard procedure. Additionally, the petitioner asserts that the BOP's policy for transferring prisoners to a CCC for the last 10% of their term of imprisonment has been ruled unconstitutional. Therefore, he seeks consideration of his CCC placement date without reliance on the challenged regulations.

## II.  Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. <u>See</u> BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 18 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmates's sentence. Section 3624(c) provides as follows:

> The Bureau of Prison shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 percent of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many other district courts,[1] found the policy contrary to the plain meaning of 18 U.S.C.

---

[1] <u>See</u> <u>Goldings v Winn</u>, 383 F.3d 17 (1st Cir. 2004); <u>Elwood v. Jeter</u>, 386 F.3d 842 (8th Cir. 2004); <u>Cato v. Menifee</u>, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003)(collecting cases).

§ 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-
>
> (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In response to those decisions, the BOP created a new regulation in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison**

3

>    **sentence** being **served**, not to exceed six months.
>
>    (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21 (Emphasis added). It is this regulation which prompts the petitioner's habeas challenge in the instant case.

### III.     Analysis

#### A.     Petitioner's Contentions

In his petition, petitioner asserts that the 10% rule for CCC placement is the standard BOP policy utilized by FCI Morgantown. Additionally, petitioner asserts that the BOP's overall policy of the 10% limitation is contrary to the plain meaning of 18 U.S.C. § 3621(b). According to the petitioner, § 3261(b) gives the BOP discretionary authority to place federal inmates in CCC placement at any time during their prison term. Petitioner further asserts that 18 U.S.C. § 3624(c) "imposed an affirmative discretion-less obligation on the BOP, where practicable, to send an offender to a less restrictive facility during a transitional period prior to final release." See Petition (dckt. 2) p. 5. Based on this interpretation, petitioner contends that FCI Morgantown is unlawfully denying petitioner's transfer. Therefore, petitioner demands the Court order FCI Morgantown to transfer petitioner to a CCC or Halfway house for the last six months of his term of imprisonment.

#### B.     Government's Contentions

In its motion to dismiss, the Government contends that the petitioner lacks standing to challenge the regulation which has not been and will not be applied to him. The Government

contends that because the petitioner has enrolled in the Bureau of Prisons's Residential Drug Abuse Program ("RDAP"), the petitioner is not eligible for CCC placement until after his treatment program has ended. Furthermore, the Government asserts that even if the regulation were eventually applied to him, the issue would not be ripe for adjudication at this point as staff at FCI, Morgantown have not made a referral for RRC placement based on the regulation. Therefore, the Government prays for the petition should be denied and this case dismissed.

C.      **Petitioner's Response**

In his response to the respondent's motion to dismiss, the petitioner simply refutes the Government's contentions. However, the petitioner does admit that he enrolled in the RDAP course. However, petitioner seems to indicate that any enrollment into the RDAP course has no effect on his CCC challenge. Hence, the petitioner reasserts his desire to be transferred to a CCC facility.

D.      **Pertinent Caselaw**

The Third Circuit Court of Appeals was the first court of appeals to address the issue raised in the instant case. In Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), the Third Circuit recognized that the various district courts to address this issue were split as to the validity of the BOP's 2005 regulations. See Woodall at 244 (collecting cases). However, after analyzing the conflicting opinions, the Third Circuit found the regulation unlawful. Id. Specifically, the Third Circuit found that the governing statute, 18 U.S.C. § 3621(b), "lists five factors that the BOP must consider in making placement and transfer determinations. The 2005 regulations, which categorically limit the amount of time an inmate may be placed in a Community Corrections Center ("CCC"), do not allow the BOP to consider these factors in full." Id. at 237. More specifically, the Court noted:

5

> [t]he regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

Id. at 244; see also Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71, 85-87 (2d Cir. 2006); Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2006).

Relying on the clear weight of authority, this District has likewise concluded that the challenged regulations are invalid. See Smith v. Gutierrez, 2:06cv121 (N.D.W.Va. Sept. 26, 2007) (Maxwell, Sr. J.); Simcoke v. Phillips, 1:07cv77 (N.D.W.Va. Sept. 18, 2007) (Keeley, C. J.); Jaworski v. Gutierrez, 5:06cv157 (N.D.W.Va. Aug. 23, 2007) (Stamp, Sr. J.); Murdock v. Gutierrez, 3:06cv105 (N.D.W.Va. July 24, 2007) (Bailey, J.). However, in doing so, the Court has made clear that such a decision does not entitle any inmate to an Order from this Court directing that he be immediately transferred to a CCC for the last six months of his sentence. Id. In fact, the Court has explicitly noted that the BOP's regulations are invalid only to the extent that an inmate's placement in a CCC is limited to the lessor of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Id. Thus, the invalidation of the BOP's regulations merely entitles an inmate to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

E.     **Residential Drug Treatment Program**

The Residential Drug Abuse Program is a course of both individual and group activities provided by a team of drug abuse specialists and the drug abuse treatment coordinator in a treatment

unit set apart from the general population, lasting a minimum of 500 hours over a six to twelve month period. 28 C.F.R. §§ 550.56 - 550.59. The RDAP course has three separate components: 1) the unit-based residential program; 2) the institution transition phase, and 3) the community transitional services phase. 28 C.F.R. §§ 550.56 - 550.59. An inmate has not successfully completed the treatment program until each of the three components has been successfully completed. If an inmate successfully completes Phase I and Phase II, if eligible, he is transferred, if eligible, to a CCC to participate in a community-based treatment program, Phase III. 28 C.F.R. § 550.59(b). Inmates who successfully complete the Residential Drug Treatment Program's institutional phase should normally be considered for the maximum 180 day period of CCC placement, if they are otherwise eligible. See Bureau of Prisons Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure, Section 7(b)(4).

Upon arriving at FCI Morgantown, the record shows that the petitioner requested to be admitted into the facility's RDAP course. See Memorandum (dckt. 9) Attachment C. After reviewing his file, FCI Morgantown's staff admitted the petitioner into the program. Id. On December 31, 2007, the petitioner signed the appropriate forms for acceptance into the program. Id. Thus, at this time, the petitioner has accepted any CCC placement decision based on the guidelines set forth under the RDAP's procedures. Therefore, any challenge to CCC placement under any other regulation would be moot. On February 1, 2008, the petitioner met with FCI Morgantown staff to discuss his community transition program and drug treatment regime. Id. Based on the discussions and petitioner's case file, the FCI Morgantown staff referred the petitioner for 180 days of CCC placement, starting on October 27, 2008. Id. Hence, the petitioner was afforded CCC placement for the last six month of his sentence. Thus, to the extent that the

7

petitioner seeks an Order from the Court directing that he be granted the full six months CCC placement, it appears that the RDAP has beaten this Court to the punch. Therefore, the petition should be dismissed.

## IV.     Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (dckt. 10) be **GRANTED** and the petitioner's § 2241 petition be **DENIED** and **dismissed with prejudice.**

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984);

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July16, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE